# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FLICK DISTRIBUTING LLC | CIVIL ACTION |
| VERSUS | NO: 09-3329 |
| ALLIED AIR ENTERPRISES, INC. ET AL | SECTION: "C" (2) |

### ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment by Flick Distributing ("Flick") (Rec. Doc. 23) and a Motion for Summary Judgment by defendants Allied Air Enterprises, Inc., ("Allied") and Lennox International ("Lennox") (hereinafter "Defendants," collectively). (Rec. Doc. 32). The motions are before the Court on the briefs without oral argument. After reviewing the memoranda of the parties, the record in the case, and the applicable law, the Court DENIES plaintiff's motion and GRANTS in part and DENIES in part Defendants' motions, as set forth below.

### I. Background

Defendants are in the business of distributing heating, ventilating, and air conditioning ("HVAC") equipment and repair parts. They entered into an oral agreement with Flick under which Flick agreed to purchase HVAC equipment and parts from Defendants. On February 2, 2009, Flick terminated the agreement via letter to Defendants. At issue in this case is unsold HVAC inventory. Flick alleges that Defendants agreed to repurchase unsold inventory, which as

of the termination of the agreement was worth $272.266.03. Having "mitigated its damages" by selling some of this inventory, at the time of the instant motions the remaining inventory was allegedly worth $116,945.60, which Flick claims in damages. Defendants allege that Flick has not paid for that inventory, and that Defendants are not required to purchase it. They claim to be owed $242.977.38 plus $57,896.06 in interest.

**II. Law and Analysis**

   *a. Standard of Review*

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d

1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

  *b. Applicability of Repurchase Act*

At the heart of this dispute is a disagreement over the applicability of the Louisiana Repurchase Act, La. Rev. Stat. 51:481, *et seq*. When applicable, the Repurchase Act requires wholesalers, manufacturers and distributors to repurchase equipment that it previously transferred to its vendee. *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 198 (5th Cir. 2003). Whether the statute is applicable is set forth in La. Rev. Stat. § 51:481.A, which reads:

> The provisions of this Part shall apply to written contracts or oral agreements of definite or indefinite duration between any person, firm or corporation engaged in the business of selling, distributing or retailing farm, construction, heavy industrial material handling, utility and lawn and garden equipment, engines, implements, machinery, attachments and repair parts for such equipment and any wholesaler, manufacturer or distributor of such equipment and repair parts, whereby the retailer agrees with the wholesaler, manufacturer or distributor to maintain a stock of such parts, or complete equipment or machines, or attachments. Any successor in interest of the manufacturer, wholesaler, or distributor shall include any purchaser of assets or stock, any surviving corporation resulting from merger or liquidation, any receiver or assignee, or any trustee of the original equipment manufacturer, wholesaler or distributor.

Flick argues that this provision applies to the relationship between Flick and the defendants. They note that the parties entered into an oral agreement with respect to the distribution of HVAC equipment and replacement and repair parts, pursuant to which Flick agreed to maintain an adequate stock of Ducane and Allied products. (Rec. Doc. 23-1 at 5). Defendants do not

3

contest these points. At issue, rather, is whether the HVAC equipment pertains to the farm, construction, heavy industrial material handling, utility or lawn and garden industries.

Primarily, Flick argues that the HVAC equipment constitutes "utility equipment." In support, it cites a FEMA homeowner's guide describing HVAC systems as one of the "five major utility systems found in most homes." (Rec. Doc. 23-1 at 7). They further argue that HVAC systems should be considered utility equipment because they are installed in cell phone towers and other commercial structures. (Rec. Doc. 23-1 at 7). In their reply, they attach in support an affidavit of a licensed general contractor, Wade Joseph, in which he attests that HVAC equipment is utility equipment. (Rec. Doc. 40 at 4).

Defendants argue that the scope of the Repurchase Act is much more limited. They point to the legislative history of the Act, focusing on its origins as an agriculture-specific act.

In *Lake Charles Diesel*, the Fifth Circuit noted that § 481.A, quoted above, is a "seemingly interminable sentence" that requires "tediously exhaustive parsing" to interpret. 328 F.3d at 199. Fortunately, that court performed the aforementioned parsing, and set forth its interpretation of the statutory language in more straightforward terms. In the relevant portion, the court explained that "[t]he tangible movable (personal) property that the Dealer agrees to sell, distribute or retail and that the Agent agrees to wholesale, manufacture or distribute, must pertain to one or more of five industries only: 1. farming; 2. construction; 3. heavy industrial material handling; 4. utility 5. lawn and garden." *Id.* at 200.

Key to the Court's understanding of the Act, is that it is limited to particular *industries*, as well as particular movables within those broader industrial categories. Few would argue that when one considers their "utility bill," included in that would be payment for running HVAC

equipment (possibly via the electricity provider). Thus, HVAC equipment is arguably utility equipment. However, there is a clear distinction between the utility *industry* and utility *equipment*. The Court agrees with the definition of utility provided by defendants, as found in Louisiana Revised Statute 14:67.24, a criminal statute regarding theft of utility property, which defines a utility as "any person or entity providing to the public gas, electricity, water, sewer, telephone, telegraph, radio, radio common carrier, railway, railroad, cable and broadcast television, video, or Internet services." La. Rev. Stat. 14:67.24(B)(1). HVAC equipment does not fall into any of these categories, and Flick's argument cannot succeed on these grounds.

Flick also argues that HVAC equipment pertains to the farm, construction, or heavy industrial handling industries because it is sold to contractors who install them in facilities within those industries. (Rec. Doc. 23-1 at 7; Rec. Doc. 42-1 at 2). In support, they cite deposition testimony of defendants' corporate representative Joe Leonard, who testified that some of their product lines are "geared towards light commercial and in some cases light industrial applications." (Rec. Doc. 42-2 at 15). He explained that "[l]ight commercial is typically 5 to 15 tons. Light industrial is 10 to 20 tons" with the one of the primary differences being "application run time," with industrial applications being "geared to run 24 hours a day for manufacturing" and light commercial more standard business hours. (Rec. Doc. 42-2 at 15).

This argument raises the question of what makes a tangible movable "pertain" to one of the qualifying industries within the meaning of the statute. No Fifth Circuit caselaw has addressed this question. One Louisiana court, needing to interpret the phrase "property pertaining to a business" cited with approval an Iowa Supreme Court decision, which itself excerpted Webster's new International Dictionary's definition of "pertain": "often with extended

5

signification in the phrase, pertaining to, belonging to, as an essential or any attendant relationship, characteristic of, peculiar to, connected with, relative to, appropriate to." *Riddle v. Allstate Ins. Co.*, 203 So.2d 820, 823 (La. App. 1967) (*citing Jerrel v. Hartford Fire Ins. Co.*, 103 N.W.2d 83, 86 (Iowa 1960)). *Black's Law Dictionary* (8th ed. 2004) defines "pertain" simply: "to relate to; to concern."

Defendants again argue that plaintiffs are stretching the meaning of the statute, suggesting that "[b]y Plaintiff's reasoning, carpet installed in the office floor of a farming building would be considered farm equipment" or "HVAC equipment and parts installed for cooling and heating of an automobile manufacturing plant would be considered automobile manufacturing equipment." (Rec. Doc. 31-1 at 9). While the former is plainly outside the ambit of the statute, it appears that Flick would not contest the second characterization. Flick asserts that when HVAC equipment is a necessary feature in the construction or operation of certain types of facilities within an industry, it in effect by nature *pertains* to that industry. (Rec. Doc. 42-1 at 1-2).

The Court agrees with the defendants that the proposed interpretation of the statute is too broad. While HVAC systems might be used in –and indeed necessary for – the construction and operation of facilities within the relevant industries, that does not make them "pertain" to the industry, nor does it make them equipment, engines, implements, machinery, or attachments of that industry. Both the *Lake Charles Diesel* decision and the statute itself make clear that the statute was written with finite industries and movables in mind. *See* 328 F.3d at 198 ("[b]oth statutory lists are finite rather than illustrative"); La. Rev. Stat. § 51:481.B ("'Farm equipment', 'construction equipment', 'heavy industrial equipment', 'material handling equipment', 'utility

6

equipment' and 'lawn and garden equipment' shall include every vehicle designed or adapted and used exclusively for agricultural, construction, industrial material handling, utility or lawn and garden operations, although incidentally operated or used upon the highways"). A generic product used across industries, such as HVAC equipment, was not what the legislature envisioned when it enacted the statute. Flick's motion for summary judgment is DENIED, and Defendants' motion is GRANTED as to the Repurchase Act claims.

  *c. Breach of Contract Claims*

  Defendants also move for summary judgment as to Flick's claims for breach of oral contract. (Rec. Doc. 32-1 at 14). Flick claims that "Benton McCarley represented to Thomas Flick of Flick Distributing that Defendants would repurchase the air conditioning and heating equipment and repair and replacement parts purchased pursuant to the Distributing Agreement at the termination of the Distributing Agreement." (Rec. Doc. 32-1 at 16). Defendants argue that an affidavit from Mr. Flick is insufficient to sustain proof of an oral contract under Louisiana law. (Rec. Doc. 32-1 at 17). Flick opposes, arguing that it is not the existence of a contract that is in dispute, but rather a repurchase provision within that contract. (Rec. Doc. 40 at 6).

  "A party who demands performance of an obligation must prove the existence of the obligation." La. Civ. Code Ann. art. 1831 (West 2010). "An oral contract over $500 must be proved by at least one credible witness and other corroborating circumstances." La. Civ. Code Ann. art. 1846 (West 2010). However, the other corroborating circumstances need only be general in nature; "independent proof of every detail of the agreement is not required." *Kilpartick v. Kilpatrick*, 660 So.2d 182, 185 (La. App. 1995) (*citing Samuels v. Firestone Tire & Rubber Co.*, 342 So.2d 661 (La. 1977)).

7

There are genuine issues of material fact as to the details of the Distribution Agreement. The Court agrees with Flick that there is potentially corroborating evidence as to the existence of the contract as whole, and the alleged repurchase provision in that contract need not be proven independently. Defendants' motion for summary judgment as to the breach of contract claims is DENIED.

### d. *Unjust Enrichment Claims*

Defendants next move for summary judgment on Flick's unjust enrichment claims. (Rec. Doc. 32-1 at 18). Both parties agree on the standard for proving unjust enrichment:

1) an enrichment on the part of the defendant;

2) an impoverishment on the part of the plaintiff;

3) a causal relationship between the enrichment and the impoverishment;

4) an absence of justification or cause for the enrichment or impoverishment; and

5) no other remedy at law.

*Edwards v. Conforto*, 636 So.2d 901, 907 (La. 1993). Flick argues that there are genuine issues of material fact as to the relative impoverishment and enrichment of the parties that preclude summary judgment. (Rec. Doc. 40 at 9). However, the contractual dispute described above precludes the unjust enrichment claim and warrants summary judgment. If Flick establishes that the oral contract included an agreement to repurchase, then Flick will have an alternative "remedy at law." If not, then Defendants' actions are justified by the Distribution Agreement, the existence of which neither party disputes, wherein they sold the HVAC units to Flick. *See Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So.2d 116, 122 (La. 1974) (contract serves as legal cause). Defendants' motion for summary judgment as to the unjust enrichments

8

claims is GRANTED.

   *e. Detrimental Reliance*

Defendants also move for summary judgment on Flick's detrimental reliance claims. Here, Defendants' arguments parallel their arguments for summary judgment on the oral contract claims, and similarly fail.

To succeed in its detrimental reliance claims, Flick must prove 1) a representation by word or conduct (to repurchase the HVAC units) 2) that Flick justifiably relied on that representation; and 3) that Flick changed its position to its detriment based on that reliance. *Gangi Seafood, Inc. v. ADT Sec. Services, Inc.*, 353 Supp.2d 710, 715 (E.D.La. 2004).

There are genuine issues of material fact as to the representations made by defendants in the course of negotiations over the distribution agreement. Defendants' motion for summary judgment as to the detrimental reliance claims is DENIED.

   *f. Defendants' Counter Claim*

Lastly, Defendants move for summary judgment on their counterclaim for the money they allege Flick owes for the cost of the HVAC units. (Rec. Doc. 32-1 at 21). Flick contests all of the elements of Defendants' counter-claim. (Rec. Doc. 40 at 12). As this dispute is almost entirely factual and its resolution is dependent on the resolution of Flick's breach of contract claim, summary judgment at this time would be premature. Defendants' motion for summary judgment on their counterclaim is DENIED.

Accordingly,

IT IS ORDERED that plaintiff's motion for partial summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED as to the Repurchase Act claims and

9

unjust enrichment claims, and DENIED as to the breach of oral contract claims, detrimental reliance claims, and their counterclaim.

New Orleans, Louisiana, this 3rd day of May, 2010.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**